UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA

| | | |
|---|---|---|
| **CHARLES DELANCEY** | * | **CIVIL ACTION NO. 2:22-cv-4647** |
| | * | |
| **VERSUS** | * | **JURY TRIAL DEMANDED** |
| | * | |
| **OCHSNER CLINIC FOUNDATION** | * | |
| | * | |

_____

**COMPLAINT**
_____

Plaintiff, Charles Delancey ("Plaintiff"), by his attorney, Natalie Blackman, for his complaint against Defendant, Ochsner Clinic Foundation. ("Defendant"), states as follows:

**NATURE OF ACTION**

1.

Plaintiff brings this action for gender, national origin, and color-based discrimination and retaliation under the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII").

**JURISIDICTION AND VENUE**

2.

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343, and Title VII. The unlawful discriminatory and retaliatory acts alleged herein were committed in New Orleans, Louisiana, within the Eastern District of Louisiana.

3.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(a).

**PARTIES**

4.

Plaintiff Charles Delancey, in his capacity as an individual, is a non-black, Hispanic, male citizen of the United States of America. Defendant is registered to do business in Louisiana.

**FACTUAL ALLEGATIONS**

**Plaintiff was subjected to discrimination and retaliation**

5.

Plaintiff is a loyal and hard-working man who has diligently worked for Defendant for the last 4 years.

6.

Plaintiff worked for the Defendant as an Operations Supervisor.

7.

During Plaintiff's employment, Plaintiff had no write-ups or disciplinary actions in his file.

8.

Plaintiff received numerous awards for his leadership. Plaintiff and his team also received the Captain American Award of the system for "The First Avenger" for most dependable IS team.

9.

Plaintiff had accumulated positive feedback from higher ups during his time working for the defendant prior to the retaliation and harassment.

10.

Plaintiff is a degreed IT Operations Supervisor with more than 15 years of experience in Information Technology.

11.

During a Data Center outage event, Plaintiff was told that he could not be trusted by Darlene Trepagnier and David Shapiro and was cursed out by David.

12.

Shortly after the outage event, on December 16, 2019, Plaintiff asked David Shapiro, his manager, if he could leave a few hours early. David Shapiro told Plaintiff no and that if he wanted to leave early, he would have to use GPT.

13.

David Shapiro did not oppose to employees leaving early and did not require them to use their GPT. David Shapiro had an agreement with Rose Rubba, a Caucasian woman employee and Plaintiff that they could leave early some days if the missed time was made up during the week.

14.

On December 17, 2019, Rose, a Caucasian woman, was not in the office for the first few hours of the morning. Plaintiff asked Rose if she had to put in GPT for her late arrival to which she responded no.

15.

David Shapiro had informed Rose that she would only have to make up the missed time during the week.

16.

In February 2020, David Shapiro was promoted to Director of Operations. David Shapiro's promotion opened a position of Operations Manager.

17.

Plaintiff expressed to Darlene Trepagnier that he would like to apply for the vacant Operations manager position.

18.

Darlene Trepagnier informed Plaintiff that he was unqualified, despite possessing the degree that was listed in the requirements posted for the job description.

19.

Plaintiff asked Darlene Trepagnier how David Shapiro was promoted to Director of Operations if he did not satisfy the job requirements for that position, which listed a college degree as a requirement. Darlene Trepagnier told Plaintiff to mind his business, to not worry about her or David Shapiro's decision and that Plaintiff should remember where he comes from.

20.

Plaintiff reached out to Darlene Trepagnier as executive leadership on multiple occasions to address the hostile behavior David Shapiro subjected him to regarding David cursing at him in front of other employees and acting belligerent.

21.

Darlene Trepagnier ignored all the Plaintiff's complaints.

22.

Between February and April 2020, Plaintiff contacted HR, Linda Hoffman, by phone and filed a grievance of discrimination, retaliation, harassment, and targeting against David Shapiro and Darlene Trepagnier.

23.

Plaintiff contacted Steve Leblond, Darlene Trepagnier's Supervisor, after contacting HR. Plaintiff informed Steve that he was being discriminated, targeted, harassed, and retaliated against based on his race and for contacting HR about the discrimination, retaliation, harassment.

24.

Plaintiff informed Steve Leblond that prior to him filing a grievance with HR, he never received any negative feedback on any evaluation.

25.

Despite Plaintiff and his team meeting all system goals, he continuously received low rates from David Shapiro, while Rose Rubba, whose team did not, would still be rated higher than the Plaintiff.

26.

Rose Rubba would still receive merit increases despite not meeting system goals, while Plaintiff was barred from this incentive even though he and his team met those goals.

27.

On May 12, 2020, Plaintiff and David Shapiro had a call that was requested by the Plaintiff and HR regarding Plaintiff's complaint with receiving unwarranted low evaluation scores from David Shapiro. Plaintiff expressed that the unwarranted low evaluation scores from David Shapiro were based on Plaintiff contacting HR an about reporting discrimination, retaliation, and harassment.

28.

During the call with David Shapiro and Plaintiff, David behaved in a condescending manner, even insinuating that Plaintiff may need to see a phycologist. David Shapiro was reluctant to provide Plaintiff with any substantive information as it relates to the low evaluation scores he was given.

29.

On May 21, 2020, Plaintiff and David Shapiro had another leadership meeting.

30.

During the call, David failed to provide plaintiff with any substantive reasons or instances that resulted in Plaintiff continuing to receive low engagement scores.

31.

Around late May/June, Plaintiff was invited to a Diversity and Inclusion meeting that was specifically for African American employees.

32.

Laura Wilt, CIO and HR Representative was on the call to hear the concerns of the African American IS employees at Ochsner.

33.

At the start of the meeting, Plaintiff inquired as to how he, the only non-black, Hispanic employee on the zoom, was chosen to be a part of this meeting if it was for the African American employees. He further inquired as to what was the criteria, they used to formulate this specific group.

34.

Plaintiff received no response to this question.

35.

However, Laura Wilt, HR Representative, and participants agreed that Plaintiff could stay and participate. Participants were informed that the call would be a safe place and any information would not be exploited.

36.

When asked during the meeting if anyone felt they were not being treated fairly, Plaintiff responded and informed Laura Wilt that he felt that African American and minority employees were not being treated fairly. Plaintiff specifically addressed how Rose Rubba, Caucasian, would still receive merit increases despite not meeting system goals, while Plaintiff was barred from this incentive even though he and his team met those goals.

37.

Plaintiff continued to inform Laura of numerous occasions where he was harassed, retaliated, and discriminated against by Darlene Trepagnier and David Shapiro. Plaintiff specifically addressed the unwarranted low evaluation scores from David Shapiro. Plaintiff expressed that the unwarranted low evaluation scores from David Shapiro were based on Plaintiff contacting HR an about reporting discrimination, retaliation, and harassment.

38.

Shortly after the Diversity and Inclusion meeting, there was an IS leadership meeting held. During this meeting, Steven Leblond mentioned Plaintiff's exacts words from the D&I meeting in front of everyone, including those he voiced his concerns against, David Shapiro and Darlene Trepagnier.

39.

On June 5, 2020, 2 months after the Plaintiff first escalation to HR for retaliation, harassment, discrimination, and targeting, HR, Steve Leblond, Darlene Trepagnier, David Shapiro, and Plaintiff had a follow-up meeting regarding the escalation.

40.

Plaintiff's concerns about the retaliation, harassment, discrimination, and targeting were not addressed. Steve Leblond only sought to remedy the merit increase issue by giving Plaintiff a 1% merit increase.

41.

David Shapiro nor Darlene denied that Plaintiff was in fact being treated differently from his coworkers and treated in an unfair way.

42.

Despite Darlene Trepagnier and David Shapiro being unable to provide proof of documented progressive disciplines, verbal disciplines, or any negative documentation to back their low scoring evaluations on Plaintiff, HR sided with them both and closed Plaintiff's case.

43.

On July 23rd, 2020, Plaintiff had a meeting with David Shapiro to go over his mid-year evaluation.

44.

Plaintiff informed David Shapiro that his evaluation only contained negative feedback omitting any positive feedback that David had previously given him before.

45.

Plaintiff informed David Shapiro that some of the information that was placed on his evaluation was incorrect and David Shapiro deleted them because he agreed they may be wrong.

46.

Plaintiff continued to prove to David Shapiro that other items on the evaluation were subjective and incorrect as well. Plaintiff showed David Shapiro emails to support his claims that the information being added to his evaluation were false and not concrete.

47.

Despite David Shapiro being shown that the information he was putting on the evaluation was incorrect, he informed Plaintiff that he is leaving it and that they could just agree to disagree.

48.

Shortly after this meeting, Plaintiff filed a second grievance for concerns of targeting, harassment, discrimination, and retaliation by contacting Linda Hoffman, HR Representative.

49.

Plaintiff provided Linda Hoffman, with detailed information regarding the negative and subjective Mid-Year Evaluation he received from David Shapiro and evidence as it relates to the truth. He again voiced the unwarranted low evaluations scores an again repeated the scores were based on his race and the fact that he had reported this same information to HR.

50.

On July 29, 2020, Plaintiff and David Shapiro had another leadership meeting. During this meeting, despite David Shapiro giving Plaintiff low evaluation scores consistently, he verbally informed Plaintiff that his engagement scores are great and that he improves more than other teams who do not have as many people as his does.

51.

Only July 30, 2020, David Shapiro, Rose Rubba, and Plaintiff had a meeting to discuss Pulse Survey results.

52.

During this meeting Plaintiff was informed that his team scores were awesome and that there was no further action required of him and his team except to try to do even better.

53.

During the meeting, the North Service Desk Team lead by Rose Rubba was informed that their score was the worse out of all departments. Plaintiff is not the supervisor over this team.

54.

In the past, Plaintiff was put on disciplinary action for low engagement scores; however, Rose Rubba was not subjected to the same treatment as the Plaintiff, despite her team having the lowest engagement scores among the Plaintiff and another team.

55.

Plaintiff was asked if he would consider helping Rose Rubba with her engagement scores, because they were worse than his.

56.

On August 31, 2020, about a month after filing his second discrimination complaint and also making remarks during the diversity meeting, Plaintiff went out on FMLA.

57.

On September 9, 2020, while on FMLA, Michael Gilpin, HR Representative assigned to Plaintiff's second complaint, informed Plaintiff via email that he and Human Resources Business Partner elected not to re-open a case with HR concerning the NOC follow-up with the results of the previous and would not investigate any further into the matter.

58.

Michael Gilpin went on further to inform Plaintiff that the incident was almost a year ago and he is sure a lot has changed by now.

59.

On January 18, 2021, while on ADA leave, Rose Rubba contacted Plaintiff to tell him that Darlene Trepagnier and David Shapiro opened a NOC manager position, which meant Plaintiff would not have a job once he returned from his leave.

60.

The new NOC Manager position would cancel out the Plaintiff's NOC Supervisor position if filled.

61.

Plaintiff returned from leave on February 3, 2021. During the week of February 15, 2021, Don Webb, an employee at Ochsner, contacted Plaintiff that he should look for another job. Webb stated that he could not tell Plaintiff why, but that Darlene and David did not plan to have me there much longer.

62.

On February 26, 2021, Plaintiff's Annual Performance Evaluation for 2020 was expedited for reasons unknown.

63.

No other leader in the IS System had been given their Annual Performance Evaluation at the same time.

64.

Plaintiff was placed on a 30-day Notice of Progressive Discipline, because of this premature evaluation.

65.

During a meeting with Darlene Trepagnier and David Shapiro, Plaintiff informed them both that he had been out on FMLA and ADA since the end of August 2020 and just returned February 3, 2021.

66.

Plaintiff informed David Shapiro and Darlene Trepagnier that before his leave, his team had the highest scores in the IS System for engagement.

67.

Plaintiff was made to sign his APE but acknowledged to both Darlene and David Shapiro that he did not agree with what was documented. The information documented on Plaintiff's APE was the same information that was reported to HR previously prior to them closing the case while Plaintiff was on FMLA and ADA.

68.

Plaintiff was not given a copy of his APE.

69.

On March 4, 2021, Plaintiff and David Shapiro had their first meeting after Plaintiff had been put on probation.

70.

Plaintiff was given tasks and work that other IS teams, including David's did not have to do.

71.

While Plaintiff was out on ADA in January, the team was under David Shapiro's supervision when the rating was below the 50%-mark expectation. Upon the Plaintiff's return from leave the efficiency of the team jumped to 60%

72.

After this increase, David Shapiro sought to move Plaintiff's expectation rating to 70% for his individual team, which was not what the agreed upon percentage for all IS teams.

73.

In March of 2021, the teams rating continued to increase to 74% under Plaintiff's supervision.

74.

On March 8, 2021, David validated the data provided by the Plaintiff showing the increase in ratings.

75.

During this call, David Shapiro also mentioned he was still working on Rose Rubba's team's metrics. Despite Rose's team still not meeting system goals and expectation ratings, she was never put on progressive discipline as the Plaintiff was.

76.

On April 1, 2021, David Shapiro called Plaintiff into his office to inform him that he was being terminated.

77.

Plaintiff's 30-day probation period was exhausted and complete at this time.

78.

Plaintiff was informed that he was being terminated due to engagement scores trending down while Plaintiff was out on FMLA and ADA.

79.

Plaintiff informed Darlene Trepagnier and David Shapiro that the Pulse Survey was not a reflection of his leadership because the team informed me that they were taking the survey on Darlene and David because the Plaintiff was on leave

80.

Darlene responded to the Plaintiff by informing that it was his problem that he was not there, and he needed to just accept the fact that he no longer works at Ochsner anymore.

81.

Plaintiff was escorted to his office by David Shapiro and told to collect his personal items and to leave immediately.

82.

Plaintiff called HR because of the incident that took place to file another grievance, but no one returned his call.

**PUNTITIVE DAMAGES**

83.

Defendant acted and/or failed to act without malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

**COUNT I**

**GENDER, RACE, NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF**

**TITLE VII**

84.

Plaintiff realleges paragraphs 1 through 82 and incorporated them by reference.

85.

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating based on race, color, sex, religion, and national origin. Title VII's prohibition against discrimination includes claims of race, gender, and national origin.

86.

During Plaintiff's employment with the Defendant, he was subjected to gender, national origin, and race-based discrimination by his supervisors, Darlene Trepagnier and David Shapiro by subjecting him to differential treatment in the terms and condition of his employment as compared to his female, Caucasian coworker Rose, in regard to his termination.

87.

Specifically, Plaintiff was held to higher work standards than Rose in regard to meeting system goals and expectation ratings and was ultimately placed on progressive discipline and terminated based on not meeting those higher standards, whereas Rose was not.

88.

Defendant knew or should have known about the harassing conduct as Plaintiff repeatedly reported these incidents to the supervisors of his supervisors and HR.

89.

Defendant failed to do anything to prevent the conduct of the individuals who contributed to the harassment and discrimination of the Plaintiff.

**COUNT II**

**RETALIATION IN VIOLATION OF TITLE VII**

90.

Plaintiff re-alleges paragraphs 1 through 82 and incorporated them by reference.

91.

Title VII, specifically 42 U.S.C. Section 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice.

92.

By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII. Plaintiff informed his direct supervisor and the HR department that he felt harassed, discriminated against, and singled out by Darlene Trepagnier and David Shapiro based on his race and for reporting discrimination to HR. Plaintiff also previously reported multiple incidents involving these individuals that violated company policy. Plaintiff had ample data to show that his engagement scores and team expectation rates meet the percentages that were required of him and that his termination was result of him reporting his supervisors David Shapiro and Darlene Trepagnier on numerous occasions for discrimination, and retaliation.

93.

After reporting these incidents, that occurred between 2019-2021, Plaintiff was retaliated against on multiple occasions to include unwarranted low evaluation scores, expedited evaluations, progressive discipline that his coworkers were not subjected to, higher standards in terms of performance, and ultimately termination.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court find in her favor against the Defendant for the following relief:

a. Declare that the acts and conduct of Defendant violates Title VII, and the anti-retaliation provisions of those laws;

b. Award Plaintiff the value of all future compensation and future benefits he will lose as a result of Defendant's unlawful conduct;

c. In the alternative to paragraph (d), reinstate Plaintiff with appropriate promotions and/or reinstatement and otherwise make Plaintiff whole;

d. Award Plaintiff damages for emotional distress, humiliation, mental anguish, loss of enjoyment of life, and inconvenience;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff prejudgment interest;

h. Award Plaintiff reasonable attorneys' fees, cost and disbursements; and

   i. Award Plaintiff such other relief deemed just and proper by this Court.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Civil Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Respectfully submitted,

_ /s/ Natalie Blackmon
Natalie Blackmon #35662
8550 United Plaza Blvd. Suite 702
Baton Rouge, LA 70809
Phone: (318) 639-4529
Fax: (888) 463-4952

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record via electronic filing, on this 29th day of March 2023.