**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHARLES DELANCEY**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 22-4647**

**OCHSNER CLINIC FOUNDATION**                 **SECTION: "G"**

## ORDER AND REASONS

Plaintiff Charles Delancey ("Plaintiff") brings this suit against his former employer, Ochsner Clinic Foundation ("OCF"), alleging gender, national origin, and race-based discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").[1]  Before the Court is OCF's Motion for Summary Judgment.[2] Plaintiff opposes dismissal of his retaliation claim, but agrees to dismissal of his discrimination claim.[3] Considering the motion, the memorandum in support and in opposition, Plaintiff's stipulation of dismissal of his discrimination claim, the record, and the applicable law, the Court denies the motion in part and finds the motion moot in part.

## I. Background

On July, 22, 2021, Plaintiff filed with the United States Equal Employment Opportunity Commission (the "EEOC") a charge of employment discrimination against OCF (the "EEOC

---

[1] Rec. Docs. 1, 15.

[2] Rec. Doc. 22.

[3] Rec. Doc. 29.

Charge").[4] On November 23, 2022, Plaintiff filed the Complaint against OCF in this Court, asserting (1) a discrimination claim, (2) a hostile work environment claim, (3) a disparate treatment claim, and (4) a retaliation claim.[5] On February 13, 2023, OCF filed a Rule 12(b)(6) Partial Motion to Dismiss, seeking dismissal of the hostile work environment claim and the disparate treatment claim.[6] On March 31, 2023, Plaintiff, with leave of Court, filed an Amended Complaint withdrawing the hostile work environment and disparate treatment claims.[7] On April 3, 2023, the Court issued an Order finding that OCF's Rule 12(b)(6) Motion for Partial Dismissal was moot.[8]

In the Amended Complaint, Plaintiff alleges that he is a Hispanic male who was employed by OCF for the last four years as an operations supervisor.[9] Plaintiff avers that he "had no write-ups or disciplinary actions in his file," "received numerous awards for his leadership," and has "more than 15 years of experience in Information Technology."[10] Plaintiff contends that, during a "data center outage event," he was told by his manager, David Shapiro ("Shapiro"), and Darlene Trepagnier ("Trepagnier") "that he could not be trusted" and "was cursed out."[11] Plaintiff alleges that, shortly thereafter, on December 16, 2019, he was told he must use general purpose time ("GPT") when he asked Shapiro if he could leave a few hours early, even though Shapiro had an

---

[4] Rec. Doc. 5-2. The parties provide no information on the disposition of the EEOC Charge.

[5] Rec. Doc. 1 at 11–12.

[6] Rec. Doc. 5.

[7] Rec. Docs. 14, 15.

[8] Rec. Doc. 16.

[9] Rec. Doc. 15 at 2.

[10] *Id*.

[11] *Id*.

agreement with both Plaintiff and a Caucasian employee, Rose Rubba ("Rubba"), "that they could leave early some days if the missed time was made up during the week."[12] Plaintiff avers that Rubba told him she was not asked to put in GPT for her late arrival on December 17, 2019.[13]

Plaintiff alleges that, in February 2020, after Shapiro was promoted, Plaintiff notified Trepagnier that he wanted to apply for Shapiro's old position, but was told "he was unqualified, despite possessing the degree that was listed in the requirements posted for the job description."[14] Plaintiff contends that, when he asked why, Trepagnier told him "to mind his business" and that he "should remember where he comes from."[15] Plaintiff asserts that Trepagnier also ignored his complaints about Shapiro "cursing at him in front of other employees and acting belligerent."[16]

Thus, between February and April 2020, Plaintiff alleges that he "filed a grievance of discrimination, retaliation, harassment, and targeting" against Shapiro and Trepagnier by contacting Human Resources ("HR")."[17] Plaintiff also alleges that he contacted Trepagnier's supervisor, Steve Leblond ("Leblond") to inform him of Trepagnier and Shapiro's behavior.[18] Plaintiff contends that, despite "his team meeting all system goals, he continuously received low [evaluations] from [] Shapiro, while [] Rubba, whose team did not, would still be rated higher."[19]

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 3.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 4.

Plaintiff avers that Rubba received merit raises but he did not.[20]

On May 12, 2020, Plaintiff alleges that he and Shapiro spoke about his "unwarranted low evaluation scores" and Shapiro "behaved in a condescending manner, even insinuating that Plaintiff may need to see a [psychologist]."[21] Plaintiff contends that Shapiro failed to give him any reasons for his low scores.[22] Plaintiff avers that, in "late May/June, Plaintiff was invited to a [d]iversity and [i]nclusion meeting that was specifically for African American employees."[23] Despite his inquiries, Plaintiff alleges that he received no explanation why he was invited but was told that he "could stay and participate" and that any discussions at the meeting "would not be exploited."[24] Plaintiff further alleges that, during the meeting, he stated his opinion that "African American and minority employees were not being treated fairly" and informed the HR representative "of numerous occasions where he was harassed, retaliated, and discriminated against" by Trepagnier and Shapiro.[25] Plaintiff contends that, shortly thereafter, "Leblond mentioned Plaintiff's exact words from the [] meeting in front of everyone, including [Shapiro and Trepagnier]."[26]

On June 5, 2020, Plaintiff alleges that he, HR, Leblond, Trepagnier, and Shapiro "had a follow-up meeting" regarding the escalation of his complaint, but his concerns were not addressed and "Leblond only sought to remedy the merit increase issue by giving Plaintiff a 1% merit

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 5.

[25] *Id.*

[26] *Id.*

increase."[27] Plaintiff further alleges that HR closed his case despite Trepagnier and Shapiro "being unable to provide proof of documented progressive disciplines, verbal disciplines, or any negative documentation to back their low scoring evaluations."[28] Plaintiff contends that, during his July 23, 2020 mid-year evaluation, after Shapiro gave him only "negative feedback," Plaintiff told Shapiro that the information in "his evaluation was incorrect" and provided proof but Shapiro "informed Plaintiff he is leaving it and that they could just agree to disagree."[29]

After his mid-year evaluation, Plaintiff asserts that he "filed a second grievance" with HR, where he provided information regarding the conversation "and evidence as it relates to the truth."[30] On July 29, 2020, Plaintiff contends that Shapiro "verbally informed Plaintiff that his engagement scores are great and that he improves more than other teams who do not have as many people as he does."[31] Plaintiff alleges that Shapiro informed him again on July 30, 2020, "that his team scores were awesome," whereas "Rubba was informed that [her team's] score was the worse [sic] out of all departments."[32] Plaintiff further alleges that, "[i]n the past, Plaintiff was put on disciplinary action for low engagement scores; however, [] Rubba was not subjected to the same treatment."[33]

Plaintiff contends that, on August 31, 2020, he took leave pursuant to the Family and

---

[27] *Id*. at 6.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 7.

[31] *Id*.

[32] *Id*.

[33] *Id*.

Medical Leave Act of 1993 (the "FMLA").[34] Plaintiff avers that, on September 9, 2020, while he was on FMLA leave, HR "informed Plaintiff via email that . . . [it had] elected not to re-open a case" regarding his second complaint "and would not investigate any further into the matter."[35] Plaintiff alleges that, on January 28, 2021, while still on leave, he was contacted by Rubba who told him a new manager position was opened, "which meant Plaintiff would not have a job once he returned."[36]

Plaintiff contends that he returned from leave on February 3, 2021, and soon after was told by another employee that "he could not tell Plaintiff why, but that [Trepagnier] and [Shapiro] did not plan to have [him] there much longer."[37] Plaintiff avers that his annual performance review for 2020 was then "expedited for reasons unknown" to February 26, 2021, unlike all the other team leaders.[38] Plaintiff asserts that he "was placed on a 30-day Notice of Progressive Discipline" even though he informed Trepagnier and Shapiro "that he had been out on FMLA [leave] since the end of August 2020 and just returned."[39] Plaintiff further asserts that he "was made to sign his [evaluation] but acknowledged to both [Trepagnier and Shapiro] that he did not agree with what was documented"—the same information he notified HR he disagreed with prior to his taking FMLA leave.[40]

Plaintiff alleges that, on March 4, 2021, Shapiro told Plaintiff to do "tasks and work that

---

[34] *Id*. at 8.

[35] *Id*.

[36] *Id*. at 8.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 8–9.

[40] *Id*. at 9.

other [] teams, including [Shapiro's,] did not have to do."[41] Plaintiff asserts that he was given these requirements even though, while Plaintiff was on leave in January 2021, his team's performance "was below the 50%-mark expectation" under Shapiro's supervision but jumped to 60% upon Plaintiff's return.[42] Plaintiff contends that, in March 2021, his team's performance increased to 74% after Shapiro "sought to move Plaintiff's expectation rating to 70% . . ., which was not the agreed upon percentage for all [] teams."[43] Plaintiff alleges that, although Rubba's team did not meet "system goals and expectation ratings, she was never put on progressive discipline."[44]

Plaintiff contends that, on April 1, 2021, while he was again out on FMLA leave, he was told by Shapiro that he was terminated "due to engagement scores trending down" and "that it was his problem he was not there."[45] Plaintiff avers that he "called HR because of the incident . . . to file another grievance, but no one returned his call."[46]

In the Amended Complaint, Plaintiff brings claims for: (1) gender, race, and national origin discrimination under Title VII (the "discrimination claim"); and (2) retaliation under Title VII (the "retaliation claim").[47]

On January 23, 2024, OCF filed the instant Motion for Summary Judgment.[48] Plaintiff,

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 10.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 10–12.

[48] Rec. Doc. 22.

with leave of Court, filed an opposition on February 17, 2024.[49] On February 20, 2024, OCF filed a reply.[50]

## II. Parties' Arguments

### 1.   OCF's Arguments in Support of the Motion for Summary Judgment

In the motion, OCF contends that Plaintiff's retaliation claim should be dismissed because Shapiro's decision to terminate Plaintiff "(1) had nothing to do with his race, color, national origin, or sex; and (2) had nothing to do with complaints Plaintiff had lodged with Trepagnier, Steve Leblond, or any HR personnel at [OCF] …"[51] OCF notes that Plaintiff never mentioned that he felt discriminated against because of his race, color, sex, or national origin when he complained to Shapiro and Shapiro never heard from anyone at OCF that Plaintiff felt he was being discriminated against on these bases.[52] OCF contends that Shapiro did not know about Plaintiff's complaints to Trepagnier, Human Resources, and the events that occurred at the diversity and inclusion meeting.[53] Therefore, OCF concludes that there is no causation between the protected activities Plaintiff engaged in and Shapiro's decision to terminate Plaintiff.[54]

OCF also argues that Plaintiff cannot show that OCF's retaliation was the "but for cause"

---

[49] Rec. Doc. 29. Under Local Rule 7.5, Plaintiff's opposition was originally due January 30, 2024, as the motion was set for submission on February 7, 2023. The Court granted Plaintiff's first extension of time to file an opposition, and Plaintiff's deadline for filing an opposition was continued from January 30, 2024 to February 14, 2024. Rec. Doc. 26. The Court granted Plaintiff a second extension to file an opposition and set the deadline for filing an opposition to February 18, 2024. Rec. Doc. 28.

[50] Rec. Doc. 30.

[51] Rec. Doc. 22-7 at 23–25.

[52] *Id.* at 25.

[53] *Id.* at 25–27.

[54] *Id.* at 25.

of Plaintiff's termination.[55] OCF reasons that "Plaintiff's termination is extremely distant in time from [] Plaintiff's last engagement in protected activity," as Plaintiff last complained to HR in July 2020 but Plaintiff was terminated on April 1, 2021.[56] OCF also reasons that "Plaintiff's past disciplinary record also indicates a retaliatory motive was not at play because Plaintiff received the same 'Developing' rating both before and after he allegedly engaged in protected activity."[57] OCF further notes that "Plaintiff offers nothing to suggest that [OCF] departed from its ordinary policy and procedure when terminating Plaintiff, and instead, the evidence indicates [OCF] made every effort to help Plaintiff succeed and improve."[58]

OCF also argues that Plaintiff's discrimination claim should be dismissed because Plaintiff failed to establish a prima facie case of discrimination and show that OCF's reasons for terminating him were pretext for discrimination or a motivating factor in his termination.[59]

## 2. *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

Plaintiff filed an opposition to the motion, agreeing to dismiss the discrimination claim.[60] Plaintiff turns to address the sole remaining claim from the Amended Complaint, the retaliation claim.[61] According to Plaintiff, he does not need to prove that retaliation was the only reason OCF terminated him.[62] Plaintiff notes that he engaged in four protected activities from 2019 to

---

[55] *Id.* at 27.

[56] *Id.*

[57] *Id.* at 28.

[58] *Id.* at 29.

[59] *Id.* at 10–11.

[60] Rec. Doc. 29 at 26.

[61] *Id.* at 10.

[62] *Id.*

2020, including (1) a 2019 sexual harassment report to Trepagnier on behalf of another employee, (2) a March 3, 2020 grievance filed with Human Resources representative, Linda Hoffman, (3) comments he made at a June 2020 Diversity and Inclusion meeting, and (4) a second complaint to Human Resources regarding his July 23, 2020 midyear evaluation meeting with Shapiro.[63] Plaintiff contends that Shapiro "knew or should have been informed of the protected activities."[64] Plaintiff reasons that "several high-level staff participated on the Diversity call in which Plaintiff referenced the white privilege of his direct [s]upervisors."[65] Plaintiff further reasons that it "is atypical for Human Resources not to fully relay the complaints of an employee to the alleged perpetrator."[66] Plaintiff further reasons that if Human Resources investigates a complaint an employee has filed, they must have relayed information in the complaint to the alleged perpetrators.[67] Plaintiff notes specifically, that attendees of the Diversity meeting must have relayed information Plaintiff shared during that meeting to Leblond, as Leblond was not at the diversity meeting but nevertheless stated that "some [diverse] IS employees feel they are being treated unfairly and that education should be the reason for promotion and executive leadership hiring."[68] According to Plaintiff, "[Leblond] or someone else could have told [Shapiro] and [Trepagnier] about Plaintiff's comments made during the Diversity video meeting since [Leblond] is their direct supervisor and the 'white privilege' comments were made about them."[69]

---

[63] *Id.* at 10–13.

[64] *Id.* at 13.

[65] *Id.* at 14.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at 14–15.

Plaintiff concludes that "whether [Shapiro] knew is a genuine issue of fact that must be determined by the factfinder."[70]

Plaintiff next argues that he was terminated for the protected activities he engaged in.[71] Plaintiff contends that because he was out on FMLA leave from August 31, 2020 to February 3, 2021, only approximately four months had elapsed from the protected activity he engaged in and his termination.[72] Plaintiff further notes that he "was placed on progressive discipline within three weeks of Plaintiff's return from a six-month FMLA leave" and his "annual evaluation was expedited upon his return."[73] Plaintiff also notes that "Defendants admit[] consulting with Steve Leblond, who knew exactly what Plaintiff stated on the Diversity call regarding [Shapiro] and [Trepagnier]" and "consulting with Amber Sahlberg to terminate Plaintiff, who was on the Diversity call when Plaintiff made the white privilege statement."[74]

Plaintiff avers that "Defendant's proffered reasons for Plaintiff's termination lacks merit and is pretext to discrimination ..."[75] Plaintiff contends that "[n]o additional evidence of discriminatory intent is required if a plaintiff's prima facie case raises a genuine issue of material fact regarding the employer's proffered reasons."[76] Plaintiff notes that "Defendant cites twelve instances alleging [P]laintiff was reprimanded following the progressive discipline plan" and there were "fourteen instances [Shapiro] alleges he provided verbal or written counseling to

---

[70] *Id.* at 15.

[71] *Id.* at 15–19.

[72] *Id.* at 17–19.

[73] *Id.* at 18 (emphasis in original).

[74] *Id.* at 19.

[75] *Id.* at 21.

[76] *Id.* (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)).

Plaintiff from April 2019 to March 2020."[77] Plaintiff disputes that these twenty-six reprimands occurred or that they were presented to him as disciplinary or performance offenses.[78] Plaintiff notes that many of these alleged reprimands were not written and OCF has "only attached one email that is directed to Plaintiff, feedback following his evaluation."[79] Plaintiff also notes that he did not receive any official write ups.[80] Plaintiff also notes that there is a discrepancy between Plaintiff's high engagement scores before he took FMLA leave and Shapiro's evaluation of his leadership as poor.[81] Plaintiff contends that OCF should not have used his low engagement scores from when he was on FMLA leave to justify Plaintiff's termination.[82] Plaintiff concludes that "[a] reasonable trier of fact may determine these proffered reasons are unworthy of credence and reasonably infer that the Defendant is covering up a discriminatory purpose for Plaintiff's termination."[83]

## C.    OCF's Arguments in Further Support of the Motion for Summary Judgment

In its reply, OCF contends that "there is no issue of fact that David Shapiro, who made the decision to terminate Plaintiff, was unaware of any instances of Plaintiff's alleged protected activity."[84] OCF contends that Plaintiff has provided no evidence suggesting Shapiro had

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at 22.

[81] *Id.* at 23.

[82] *Id.* at 23–24.

[83] *Id.* at 25.

[84] Rec. Doc. 30 at 2.

knowledge of any of the four instances of alleged protected activity Plaintiff has identified.[85]

First, in reply to the first instance of protected activity Plaintiff identified, OCF avers that Plaintiff's statement that "[Shapiro] should have been notified" of Plaintiff's complaint is an admission that Shapiro did not know.[86] Second, in reply to Plaintiff's identification of a second instance of protected activity, his complaint to Linda Hoffman and Steve Leblond, OCF avers that Plaintiff has not offered evidence suggesting that Shapiro knew of any complaint he made to Hoffman or Leblond.[87] OCF also avers that Plaintiff did not mention his race or national original during all twenty-two recorded conversations with OCF personnel Plaintiff sent in his discovery responses.[88] Third, in reply to Plaintiff's identification of a third protected activity, his comments at a diversity and inclusion meeting, OCF contends that "Plaintiff has no evidence to suggest that Shapiro knew this listening session occurred at all, let alone evidence showing that Shapiro knew of Plaintiff's attendance at the meeting or that Plaintiff complained at the meeting."[89] OCF notes that Shapiro and Trepagnier did not attend the meeting and Plaintiff did not name Shapiro or Trepagnier at the meeting.[90] Fourth, in reply to the fourth instance of protected activity Plaintiff identified, Plaintiff's second complaint to Human Resources, OCF again argues that Plaintiff provides no evidence that Shapiro knew of this complaint.[91] OCF argues that as the person making the final decision to terminate Plaintiff, Shapiro's sworn testimony indicates that "he

---

[85] *Id.* at 3.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 3–4.

[89] *Id.* at 4.

[90] *Id.*

[91] *Id.*

never heard from anyone at [OCF] that Plaintiff had complained about race, color, sex, or national origin discrimination …"[92]

OCF next argues that even if Plaintiff could establish a prima facie case, Plaintiff cannot show that his alleged protected activity was the but for cause of his termination because OFC has provided legitimate, non-discriminatory reasons for terminating Plaintiff.[93] In reply to Plaintiff's argument that only four months elapsed from when he made his second Human Resources complaint to when he was terminated, OCF notes that there were earlier instances of protected activity Plaintiff alleges he participated in that would have created a longer gap between those instances of the protected activity and Plaintiff's termination.[94] OCF also avers that the four-month gap is still at the outer limit for establishing a prima facie case of retaliation.[95] OCF also contends that there is no pretext for terminating Plaintiff because his performance reviews remained constant at a "Developing" rating throughout his three years of employment.[96]

In reply to Plaintiff's argument that the twenty-six identified instances of Plaintiff's deficient performance and/or informal counseling did not occur or were not presented to him, OCF counters that "Plaintiff does not deny outright that he was informally counseled or that his performance was often deficient …"[97] In reply to Plaintiff's argument that his team rated his leadership abilities as "exceptional," OCF counters that this is based on Plaintiff's self-serving

---

[92] *Id.* at 5.

[93] *Id.*

[94] *Id.* at 7.

[95] *Id.* (citing *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007); *Russell v. Univ. of Tex.*, 234 Fed. App'x 195, 206 (5th Cir. 2007)).

[96] *Id.* at 8.

[97] *Id.*

declaration.[98] OCF also counters that the engagement score reports Plaintiff references is produced at mid-year and year's end, so even if Plaintiff took FMLA leave during that time period, the engagement surveys are meant to capture his performance for the whole year.[99]

### III. Legal Standards

#### A.    Legal Standard on a Motion for Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[100] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[101] All reasonable inferences are drawn in favor of the nonmoving party.[102] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[103] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[104] The nonmoving party may not rest upon the pleadings.[105] Instead,

---

[98] *Id.* at 9.

[99] *Id.*

[100] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[101] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[102] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[103] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[104] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[105] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[106]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[107] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[108] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[109] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[110]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[111] Moreover, the

---

[106] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[107] *Celotex Corp.*, 477 U.S. at 323.

[108] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[109] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[110] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[111] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

nonmoving party may not rest upon mere allegations or denials in its pleadings.[112]

## B.    *Legal Standard on a Title VII Claim*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on sex, race, color, religion, and national origin in employment decisions, including firing.[113] The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under Title VII, as well as allegations of retaliation.[114] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.[115] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[116] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[117] The defendant must point to admissible evidence in the record,[118] but the burden is one of production, not persuasion.[119] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[120] "[E]ven an incorrect

---

[112] *Morris*, 144 F.3d at 380.

[113] 42 U.S.C. § 2000(e) *et seq.*, as amended.

[114] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014)).

[115] *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[116] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

[117] *Id.*

[118] *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

[119] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[120] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made

belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[121]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[122] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[123]

### IV. Analysis

Because Plaintiff agrees to dismiss the discrimination claim, the only remaining claim is the retaliation claim.[124] OCF contends that Plaintiff cannot establish a prima facie case of retaliation under Title VII because he cannot establish a causal relationship between any protected activity and his termination, as Shapiro did not know of Plaintiff's protected activities before terminating Plaintiff.[125] OCF also contends that even if Plaintiff is able to establish a prima facie case of retaliation, the protected activities Plaintiff engaged in were not the but for cause of Plaintiff's termination, as Plaintiff was terminated for his inadequate job performance.[126] Plaintiff counters that he is able to establish a prima facie case as Shapiro knew of or should have known of Plaintiff's complaints to Trepagnier, Human Resources, and the comments he made at the

---

with discriminatory motive.").

[121] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[122] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[123] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[124] Rec. Doc. 29 at 26.

[125] Rec. Doc. 22-7 at 24–27; Rec. Doc. 30 at 2–5.

[126] Rec. Doc. 22-7 at 27–29; Rec. Doc. 30 at 5–10.

Diversity and Inclusion meeting.[127] According to Plaintiff, there is a factual dispute as to whether Shapiro knew of Plaintiff's complaints.[128] Plaintiff also counters that there was pretext for his termination, as he was terminated for his protected activities rather than for his alleged inadequate job performance.[129] In support of the motion, OCF attached Plaintiff's deposition, Shapiro's mid-year and annual performance evaluations of Plaintiff, Shapiro's sworn declaration, and email correspondence related to Plaintiff's complaints, and the 30-Day Notice of Progressive Discipline, Shapiro's mid-year and annual performance evaluations of Rubba, and the sworn declaration of Trepagnier.[130] In opposition to the motion, Plaintiff attached OCF's sexual harassment reporting policy, Plaintiff's sworn declaration, his performance reviews given by Shapiro, emails related to Plaintiff's complaints, Plaintiff's engagement scores, and the 30-day Notice of Progressive Discipline.[131]

## A.   Whether Defendant is Entitled to Summary Judgment on Plaintiff's Title VII Retaliation Claim

### 1.   Whether Plaintiff has Established a Prima Facie Case of Retaliation

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, "the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[132] An employee engages in

---

[127] Rec. Doc. 29 at 11–19.

[128] *Id.* at 15.

[129] *Id.* at 19–25.

[130] Rec. Docs. 22-4, 22-5, 22-6.

[131] Rec. Doc. 29-3.

[132] *McCoy*, 492 F.3d at 557 (citing *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

activity protected by Title VII when the employee has "opposed any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[133] Pursuant to Fifth Circuit precedent, "[a] causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity."[134]

Plaintiff contends that he participated in four activities protected by Title VII: (1) a 2019 complaint to Trepagnier concerning Shapiro's alleged sexual harassment of a female coworker, (2) a complaint to Human Resources on March 3, 2020 where Plaintiff allegedly reported racial discrimination, (3) a June 2020 Diversity and Inclusion Meeting where Plaintiff purportedly make remarks on racial discrimination, and (4) a second complaint to Human Resources on July 23, 2020 where he purportedly complained about racial discrimination.[135] Further, Plaintiff contends that Shapiro "knew or should have known" about these four protected activities.[136] In addition to Shapiro's knowledge of these four protected activities he engaged in, Plaintiff avers that there was only a four month period between when Plaintiff made his second complaint to Human Resources on July 23, 2020 and when he was terminated in April 2021, as he took FMLA leave from August 31, 2020 to February 3, 2021.[137] OCF avers that there is no causal relationship between these four protected activities and Plaintiff's termination, as Shapiro did not have any

---

[133] 42 U.S.C. § 2000e-3(a); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

[134] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

[135] Rec. Doc. 29 at 11–13.

[136] *Id.* at 13–15.

[137] *Id.* at 15–19.

knowledge of these complaints.[138] OCF thus disputes that Plaintiff has made a prima facie showing of a retaliation claim under Title VII.[139] Because the record contains little information about Plaintiff's first protected activity, his reporting of Shapiro's alleged sexual harassment of a colleague to Trepagnier, the Court turns to discuss the three other protected activities Plaintiff has identified.

### i.      The March 3, 2020 Complaint to Human Resources

The record reflects that there is a genuine dispute of fact as to whether Shapiro knew of Plaintiff's March 3, 2020 complaint to Human Resources about Shapiro's alleged discrimination towards Plaintiff. Plaintiff argues that if Human Resources investigated Plaintiff's complaint, it had to have communicated to Shapiro the allegations Plaintiff made against him in the course of that investigation.[140] Plaintiff testified that he believes he mentioned racial discrimination in this first complaint to Human Resources.[141] Sometime after Plaintiff alleges he made this complaint to Human Resources, it appears that Human Resources attempted to mediate the problem between Plaintiff and Shapiro.[142] In a June 2, 2020 email from Shapiro to Hoffman in Human Resources, Shapiro wrote in part: "I chose not to address the comments [Plaintiff] made about me that I brought to you and Darlene."[143] Drawing a reasonable inference in favor of Plaintiff here, Shapiro's email suggests that he was aware of Plaintiff's complaints about him, as Shapiro states

---

[138] Rec. Doc. 30 at 2–5.

[139] *Id.* at 2.

[140] Rec. Doc. 29 at 14 ("It is atypical for Human Resources not to fully relay the complaints of an employee to the alleged perpetrator.").

[141] Rec. Doc. 22-4 at 30.

[142] *See* Rec. Doc. 22-5 at 12–25.

[143] *Id.* at 16.

that Plaintiff brought some of those directly to him.

ii.      The Diversity and Inclusion Meeting in May or June 2020

There is also a genuine dispute of fact as to whether Leblond, Shapiro, and Trepagnier

knew of the comments Plaintiff made in a Diversity and Inclusion meeting in May or June 2020.

According to Plaintiff, he said the following at the Diversity and Inclusion meeting:

> "I mentioned that there's a gloom over the African American and minority leadership and subject matter expert groups, because a lot of us have Bachelors degrees and Associates degrees, higher education with a lot of experience are being paid less than Caucasian individuals who have no college degree and—and a lot less experience. Another thing that I mentioned was that I personally was experiencing that, you know, how could the people that I report to with—don't qualify with the HR guidelines. Basically the jobs both require a Masters degree or Bachelors degree for the positions, which was David and Darlene, and I report to them. I said 'you know, that's – that's what people like me call white privilege,' you know, and I said that. I also said, you know, that, you know, I had reported all these things that I mentioned to you previously, and it just seems like it always gets swept under the rug, and that's why people are scared to come forth with anything."[144]

Plaintiff believes that Leblond knew the comments he made in the meeting because in a later

leadership monthly call, Leblond "repeated exactly what I said on that call, and he was not on

[the DEI] call, and he said the executive team had a conversation about some minority individuals

believe [] – and he repeated that education and experience should be the sole reason for executive

employment and leadership employment …"[145]

In his sworn declaration, Plaintiff states that Ashley Weber and Famia Root were present

in this Diversity and Inclusion meeting.[146] He further states that in the monthly leadership meeting

where Leblond made comments echoing the comments he made at the Diversity and Inclusion

---

[144] Rec. Doc. 22-4 at 36–37.

[145] *Id.* at 38.

[146] Rec. Doc. 29-2 at 7.

meeting, Ashley Weber, Famia Root, Darlene Trepagnier, and David Shapiro were all present.[147] Plaintiff testified that although Leblond did not name him specifically, some of his coworkers messaged him about Leblond's comments.[148] Plaintiff testified that one coworker who messaged him was Famia Root, who Plaintiff states was at the Diversity and Inclusion meeting.[149] In his deposition, Plaintiff testified that he believes Trepagnier knew what he said at the DEI meeting, in part because of Leblond's comment and in part because several of his coworkers contacted him after Leblond's remarks at the monthly leadership meeting.[150] From Plaintiff's deposition and his sworn statement, it is plausible that individuals at the Diversity and Inclusion meeting relayed those comments to Leblond, Trepagnier, or Shapiro.

### iii.    The July 26, 2020 Complaint to Human Resources

On July 26, 2020, Plaintiff sent Human Resources an email with a subject line stating "Negative Mid-Year Review and Concerns of targeting, harassment, and retaliation."[151] In the email, Plaintiff attached a five-pages long letter detailing the lack of positive comments he received in the Mid-Year Performance Evaluation Shapiro had given him.[152] In the last paragraph of the email, Plaintiff wrote:

> "This is my second reported concern and second grievance of being outed, targeted, and retaliated against. I feel that I'm being treated differently for escalating my concerns about my year end evaluation from last year related to him and Darlene. That escalation was also related to retaliation for doing the right thing and demonstrating Ochsner's core values of integrity and innovation throughout

---

[147] *Id.*

[148] Rec. Doc. 22-4 at 38.

[149] *Id.*

[150] *Id.* at 66–67.

[151] *Id.* at 95–99.

[152] *See id.*

23

circumstances and scenarios. I didn't take this second matter to Darlene because David had already mentioned at the beginning of the meeting, 'him and Darlene are in agreeance and have gone over this already.'"[153]

From this email, the Court could infer that Shapiro and Trepagnier may have discussed Plaintiff's complaints about Shapiro, as Plaintiff states that Shapiro and Trepagnier have already discussed his objections to how he was being evaluated by Shapiro. Further, OCF provided the sworn declaration of Shapiro, where Shapiro stated that on April 1, 2021, "with consultation with Steve Leblond, … Darlene Trepagnier, …, as well as Amber Sahlberg and Linda Hoffman, HR, I made the decision to terminate [Plaintiff]."[154] The Court could infer that Leblond, Trepagnier, and Hoffman informed Shapiro of Plaintiff's complaints, as they evaluated whether Plaintiff should be terminated.

Reviewing the record and drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the Court finds that Plaintiff has established a prima facie case of retaliation. Further, whether Shapiro knew of Plaintiff's protected activities is genuinely factually disputed. Although the parties dispute whether the timeframe from Plaintiff's second Human Resources complaint to his termination is four months or seven months based on Plaintiff taking FMLA leave during that time period, timeframe alone is not dispositive of whether the causation element has been met.[155] Nor is it a matter of law that a four-month period, but not a seventh month period satisfies causation.[156] Thus, the burden shifts to OCF to provide a legitimate, nondiscriminatory

---

[153] *Id.* at 99.

[154] Rec. Doc. 22-5 at 6.

[155] *See Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454–455 (5th Cir. 2013) (nothing that "a five month lapse is not close enough without other evidence of retaliation" and such other evidence "may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures.") (citations omitted)).

[156] *Washburn*, 504 F.3d at 505 (remarking that a four-month period may be close enough to make a *prima facie* showing of causation but a twenty-month period was not) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (noting that Fifth

reason for terminating Plaintiff.

## 2.  Whether Defendant has Articulated a Legitimate, Nondiscriminatory Purpose for Plaintiff's Termination

According to OCF, Plaintiff was terminated for continued performance deficiencies.[157] OCF explains that "Shapiro terminated Plaintiff because of his "Developing" rating for two consecutive years and because, despite frequent coaching and a Progressive Discipline notice, Plaintiff failed to improve his leadership, communication, and accountability skills, each of which is critical to Plaintiff's role as a supervisor …"[158] OCF further explains that Plaintiff "(1) frequently missed deadlines; (2) failed to perform some functions of his position, forcing Shapiro to perform Plaintiff's duties for him; and (3) failed to effectively communicate with his team members, leading to several complaints Plaintiff was aggressive and made employees uncomfortable, that Plaintiff would redirect blame for departmental issues onto specific employees, and that Plaintiff's ineffective communication caused confusion amongst his team as to their respective roles and duties within the NOC."[159] OCF notes that from April 2019 to March 2020, Shapiro provided verbal or written counseling to Plaintiff on at least fourteen occasions.[160]

Plaintiff received "Developing" ratings in both his 2018 and 2019 Annual Leadership reviews.[161] In the 2019 annual review, Shapiro wrote that Plaintiff lacks self awareness, does not communicate effectively, and his tone and demeanor can be off-putting in a way that makes his

---

Circuit cases have held that fifteen months, twenty-one months, thirty months were too long to establish causation for a prima facie case) (citations omitted)).

[157] Rec. Doc. 22-7 at 17–18; Rec. Doc. 30 at 7–10.

[158] Rec. Doc. 22-7 at 17.

[159] *Id.* at 14 (citing Rec. Doc. 22-4 at 72, 92; Rec. Doc. 22-5 at 32).

[160] *Id.*

[161] Rec. Doc. 22-4 at 72, 82.

team members hesitate to give him direct feedback.[162] In the 30-Day Notice of Progressive Discipline dated February 26, 2021, Shapiro wrote that Plaintiff had not made "sufficient improvements" identified in the two previous Annual Leadership reviews "despite coaching and a Performance Improvement Plan."[163] Shapiro noted that "[t]here have been weekly conversations" between him and Plaintiff to develop leadership exepctations, but Plaintiff had not improved in the past two years in his leadership role.[164] On March 22, 2021, Shapiro emailed Human Resources and Trepagnier to discuss terminating Plaintiff, as Shapiro believed that Plaintiff did not show any improvements as the 30-Day Notice of Progressive Discipline drew to a close.[165] On April 1, 2021, Shapiro terminated Plaintiff because he was not seeing improvements in Plaintiff's leadership, communication, or accountability.[166]

Because the record supports OCF's contention that they terminated Plaintiff due to his performance issues, the burden shifts back to Plaintiff to show whether the performance deficiencies identified by OCF as the reason for Plaintiff's termination is merely pretext for discrimination.

### 3. Whether Plaintiff has Shown that the Non-Discriminatory Purposes Offered by OCF are Merely a Pretext for Discrimination

In his sworn declaration, Plaintiff denies that he was disciplined on fourteen instances between February 26, 2021 and March 21, 2021.[167] He also denies that he was disciplined twelve

---

[162] *Id.* at 86.

[163] Rec. Doc. 22-5 at 32.

[164] *Id.*

[165] *Id.* at 35.

[166] *Id.* at 41.

[167] Rec. Doc. 29-2 at 11.

times after Shapiro issued him the 30-Day Notice of Progressive Discipline, as he "never received a verbal [reprimand], writeup, or made aware of any instances that were to be considered disciplinary actions."[168] OCF attached one email dated June 9, 2020 Shapiro sent to Plaintiff out of those twenty-six alleged instances of disciplinary action.[169] OCF also attached a May 13, 2020 dated email to Linda Hoffman in Human Resources listing fourteen instances he communicated with Plaintiff regarding his performance issues.[170] Because Plaintiff denies that these 26 alleged instances of disciplinary action occurred, there is a genuine factual dispute as to whether Plaintiff was terminated for his performance or whether that was simply pretext for discrimination. Further, Defendants have not provided other evidence of the disciplinary actions other than the June 9, 2020 email. Therefore, the record contains conflicting evidence as to whether Plaintiff was actually terminated for performance inadequacies or if this is merely pretext for Plaintiff's participation in protected activities.

The Supreme Court has held that a plaintiff is required to prove his or her employer's desire to retaliate was the but-for cause of his termination.[171] Although there is a circuit split as to whether the but-for causation standard applies to both the prima facie step and the pretext step of the *McDonnell Douglas* analysis, the Fifth Circuit reaffirmed that a plaintiff is only required to prove but-for causation for the third, pretext step of *McDonnell Douglas*.[172] Here, there is a genuine factual dispute as to whether Plaintiff would have been fired had he not participated in

---

[168] *Id.*

[169] Rec. Doc. 22-5 at 16–19.

[170] *Id.* at 12–15.

[171] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 388, 352 (2013).

[172] *Garcia*, 938 F.3d at 241–242.

the protected activities discussed above. Thus, whether but-for causation has been met is a factual matter to be decided by a factfinder.

### V. Conclusion

Under the *McDonell Douglas* framework for a Title VII retaliation claim, Plaintiff's retaliation claim against OCF survives summary judgment.[173] Plaintiff has made a "minimal showing" that he has a prima facie case of retaliation against OCF, even if there is a factual dispute as to whether Shapiro knew of the protected activities Plaintiff engaged in.[174] Although OCF provided Plaintiff's performance issues as a legitimate, non-discriminatory reason for terminating Plaintiff, Plaintiff has provided countervailing evidence indicating that OCF's proffered reason for terminating him could be pretext for Plaintiff's participation in protected activities. Because there is a genuine factual dispute as to whether Plaintiff was terminated because of performance deficiencies or if those performance deficiencies were a pretext for Plaintiff's participation in protected activities under Title VII, summary judgment for OCF is inappropriate.

Accordingly,

---

[173] *McDonnell Douglas*, 411 U.S. at 802.

[174] *Nichols*, 81 F.3d at 41.

**IT IS HEREBY ORDERED** that OCF's "Motion for Summary Judgment"[175] is **DENIED** to the extent that the retaliation claim survives. It is **MOOT** to the extent that Plaintiff has agreed to dismiss his discrimination claim.

**NEW ORLEANS, LOUISIANA,** this _22nd_ day of May, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[175] Rec. Doc. 22.